ARTHUR L. FRENCH ET AL. *v.* TOWN OF CLINTON ET AL.
(13777)

PETERS, C. J., SHEA, GLASS, COVELLO and HULL, Js.

Argued April 4—decision released June 5, 1990

*Jane W. Freeman,* for the appellants (plaintiffs).

*Emil A. Augustine,* for the appellees (defendants).

PETERS, C. J. The principal issue in this condemnation case is the propriety of the trial court's method of determining the value of property taken by eminent domain. The defendants, the town of Clinton and the Clinton water pollution control commission, filed a statement of compensation in the amount of $275,000 in connection with the taking, for the purpose of constructing a municipal water pollution control facility, of a parcel of property owned by the plaintiffs, Arthur L. French and Mario, Louise and Angelo Lupone. The defendants subsequently filed a return of notice, whereupon the clerk of the court issued a certificate of taking. Upon the plaintiffs' application for review of the statement of compensation, pursuant to General Statutes § 8-132,[1] the *Hon. Harry W. Edelberg,* state trial referee, exercising the powers of the Superior Court, assessed additional damages of $100,000. The court also ordered that the defendants pay interest on the deficiency and reimburse the plaintiffs for appraisal and engineering fees. The plaintiffs appealed to the Appel-

---

[1] General Statutes § 8-132 provides in pertinent part: "Any person claiming to be aggrieved by the statement of compensation . . . may, at any time within six months after the same has been filed, apply to the superior court for the judicial district in which such property is situated . . . ." Although § 8-132 applies by its terms only to condemnations by redevelopment agencies, the provision applies also to takings by municipal water pollution control authorities by virtue of General Statutes § 7-248, which provides that compensation for such takings shall be determined "in the same manner specified for redevelopment agencies in accordance with sections 8-129 to 8-133, inclusive . . . ."

late Court, and we transferred the case to ourselves pursuant to Practice Book § 4023. We affirm the trial court's judgment.

The trial court's memorandum of decision reveals the following undisputed facts. The property at issue is located at 30 Highland Drive in Clinton. In all, the property contains approximately 6.78 acres, 2.78 acres of which are tidal wetland, and also includes 820 feet of frontage along the Hammonassett River as well as riparian rights extending to the center of the river. A 720 square foot one-story cottage is located on the property. Municipal water is available in the area, and an on-site sewage disposal system could be constructed.

The trial court found that, due to the proximity of the property to Long Island Sound and the shortage of dockage and winter storage space available to the boating public, a small craft marina was the highest and best use of the premises. The court found in particular that a conceptual marina site plan proposed by the plaintiffs, which included 89 boat slips, year round storage for 100 boats and a winter storage shed for 50 boats, could be accommodated on the property. Such a marina could, however, serve only small craft because access from Long Island Sound is limited by a low clearance bridge. The trial court also determined that a marina would be a permissible use under the Clinton Zoning Regulations, and further determined that the plaintiffs probably could have secured the necessary permits from the town, state, and the Army Corps of Engineers but for the condemnation of the property.

Turning to the question of value, the court found that the taken property was worth $375,000 in light of its potential for use as a marina. The court thus ordered that the defendants pay an additional $100,000 along with the $275,000 deposited with the statement of compensation. In addition, the court awarded the plaintiffs

interest on the $100,000 by which the defendants' statement of compensation was deficient, $7700 for appraisal fees and $5000 for costs incurred in preparing maps, plans and mechanical drawings.

On appeal, the plaintiffs raise two challenges to the trial court's decision. First, the plaintiffs contend that the court's valuation of the taken property is flawed because the court failed to apply the most appropriate appraisal method and erroneously rejected the testimony of their appraiser concerning the value of certain comparable properties. Second, the plaintiffs argue that the trial court erred in refusing to award full reimbursement for the engineering costs that they incurred in preparing the conceptual site plan for a marina.

I

The plaintiffs' first and central contention on appeal challenges the trial court's valuation of the taken property. The plaintiffs contend that the trial court should have adopted the appraisal method proposed by their expert when both parties' experts agreed that the appraisal method was appropriate under the circumstances of this case, and that the trial court erred in rejecting that appraisal method. The plaintiffs further argue that the trial court mistakenly concluded that the real estate conveyance tax stamp on a deed provides more reliable evidence of the purchase price of comparable properties than the out-of-court statements of the owners of those properties. We conclude that neither of these arguments is persuasive.

We have consistently reaffirmed the principle that, because each parcel of real property is in some ways unique, trial courts must be afforded substantial discretion in choosing the most appropriate method of determining the value of a taken property. *D'Addario* v. *Commissioner of Transportation,* 180 Conn. 355, 365, 429 A.2d 890 (1980); *Slavitt* v. *Ives,* 163 Conn. 198,

209, 303 A.2d 13 (1972); *Moss* v. *New Haven Redevelopment Agency,* 146 Conn. 421, 425–26, 151 A.2d 693 (1959). "In condemnation proceedings, the trial court is more than a trier of facts or an arbiter of differing opinions of witnesses; it is charged with the duty of making an independent determination of value and fair compensation in light of all the circumstances, the evidence, its general knowledge and its viewing of the premises." *D'Addario* v. *Commissioner of Transportation,* supra, 366; *E & F Realty Co.* v. *Commissioner of Transportation,* 173 Conn. 247, 253, 377 A.2d 302 (1977).

At trial, the plaintiffs' appraiser, Norman Benedict, testified that the fair market value of the taken property was $675,000, calculated on the basis of a formula of $7500 per potential boat slip. Benedict testified that he reached the $7500 per slip figure after studying the recent sales of ten area marinas, with a particular focus on three that he regarded as most similar to the marina proposed in this case. Benedict explained that, because the comparable properties were fully developed, he adjusted the sales prices by an amount reflecting the value of the improvements. He determined the value of the improvements by asking the owners of the comparable properties to allocate the amount of the purchase price attributable to land and the amount attributable to the improvements, with the results for the three most comparable marinas as follows: (1) $600,000 to land and $50,000 to improvements; (2) $500,000 to land and $30,000 to improvements; and (3) $925,000 to land and $425,000 to improvements. Howard Russ, an appraiser for the defendants, agreed that it is customary appraisal practice to inquire of property owners the amounts that they would allocate to land and improvements when fully developed properties are used to establish the value of unimproved land, although he emphasized that an appraiser should also

make an independent evaluation of the respective values of the land and the improvements.

In its memorandum of decision, the trial court relied exclusively on the three comparable marinas that Benedict had found most similar to the property at issue in this case, and reiterated in detail Benedict's testimony concerning the allocation of the purchase price between land and improvements. The court also considered, however, in accordance with the testimony of the defendants' appraiser, that the owners' allocations of value between land and improvements should not be regarded as conclusive since the owners had no expertise in the field of land appraisal. In addition, the court found that the value of the taken property would be less than Benedict's appraisal because Benedict had failed to take into account the substantial expense associated with the process of obtaining the necessary permits to construct a marina in such an ecologically fragile area, as well as the fact that a marina at this location would likely be less profitable than the comparable marinas due to its greater distance from Long Island Sound and to the limitations on boat size imposed by the low clearance bridge.

Contrary to the plaintiffs' assertions, the memorandum of decision does not indicate that the trial court rejected Benedict's appraisal method. Both the court's exclusive reliance on the comparable sales on which Benedict had focused and the court's careful consideration of his testimony comparing those comparable properties to the property in this case indicate that the court in fact adopted Benedict's appraisal method, albeit with some modification. That the court also considered several other factors that it considered relevant to the value of the property in no way undermines the propriety of the court's judgment. To the contrary, as we have previously emphasized, a trial court may seek aid in the testimony of experts, but must ulti-

mately make its own "independent determination of fair compensation"; *McDermott* v. *New Haven Redevelopment Agency,* 184 Conn. 444, 447, 440 A.2d 168 (1981); on the basis of all the circumstances bearing upon value. *Bowen* v. *Ives,* 171 Conn. 231, 239, 368 A.2d 82 (1976); *Bennett* v. *New Haven Redevelopment Agency,* 148 Conn. 513, 516, 172 A.2d 612 (1961). We conclude that the trial court applied an appropriate method of valuation under the circumstances of this case.

The plaintiffs further maintain, however, that the trial court should not have rejected certain testimony concerning the value of comparable marinas. The testimony at issue concerns the actual purchase price of two of the ten marinas that Benedict cited. Benedict testified that it was his opinion, based upon the statements of the owners of these two marinas, that the sales prices for the properties were substantially higher than the amounts indicated by the real estate conveyance tax stamps on the deeds. In the case of the first comparable property, Benedict testified that the owner had indicated an actual purchase price of $650,000, while the tax stamp showed a consideration of only $280,000. Benedict represented that the owner of the second comparable marina had claimed an actual purchase price of $530,000, but the tax stamp on the deed indicated a sales price of only $435,000. According to the plaintiffs, the trial court's statement that it regarded the tax stamps as more reliable evidence than the statements of the owners is erroneous because the court had no evidence that Benedict's testimony was unworthy of belief.[2]

[2] During the trial, the court did indicate that it would consider only the tax stamps and would give no consideration to Benedict's testimony concerning the owners' statements. The court later concluded, however, that Benedict's testimony on this subject could be considered, but that it was less reliable evidence than the tax stamps.

The plaintiffs' argument fails to recognize the independent evidentiary value of the real estate conveyance tax stamp. Although the plaintiffs correctly note that the consideration stated in the deed does not necessarily reflect the actual purchase price, the tax stamp is an endorsement made by the town clerk stating the actual amount of tax paid. General Statutes § 12-495. The amount of tax paid, in turn, is based upon a percentage of the true purchase price, which the party recording the instrument must disclose under penalty of law. General Statutes § 12-502. Absent some compelling evidence that the tax stamp was based upon a falsified statement of the actual consideration, the amount indicated by the stamp provides persuasive evidence of the true purchase price.

Furthermore, we have often reaffirmed the principle that "[t]he credibility of . . . expert witnesses and the weight to be accorded to their testimony are within the province of the trier of facts, who is privileged to adopt whatever testimony he reasonably believes to be credible." *New Haven Water Co.* v. *Board of Tax Review,* 166 Conn. 232, 240, 348 A.2d 641 (1974); *Transportation Plaza Associates* v. *Powers,* 203 Conn. 364, 377, 525 A.2d 68 (1987); *Ferri* v. *Pyramid Construction Co.,* 186 Conn. 682, 690, 443 A.2d 478 (1982). The plaintiffs' contention asked the court to accept as true the statements of two parties who never appeared before the court, notwithstanding the inherent infirmities of hearsay evidence; *Volck* v. *Muzio,* 204 Conn. 507, 518, 529 A.2d 177 (1987); *Danahy* v. *Cuneo,* 130 Conn. 213, 217, 33 A.2d 132 (1943); while rejecting the evidence provided by a public record concerning a transaction to which the same out-of-court declarants had been parties. Under the circumstances, the trial court was entitled to conclude that Benedict's testimony was less worthy of belief than the purchase prices indicated by the tax stamps.

## II

In their second challenge to the trial court's decision, the plaintiffs contend that the trial court should have awarded them full reimbursement for engineering fees incurred in preparing for trial. According to the plaintiffs, the trial court's determination that $5000 was a reasonable amount for engineering fees was clearly erroneous when the engineer's total bill was $48,933 because the trial court explicitly found that the plaintiffs' engineer had done extensive work in researching the feasibility of a marina, surveying the site, preparing maps, plans, and mechanical drawings and testifying at trial. We disagree.

The determination of the costs to be awarded in condemnation cases involving municipal water pollution control authorities is governed by General Statutes § 8-133.[3] Section § 8-133 provides that the trial court shall award "costs of court . . . as the court determines to be reasonable" whenever the court finds a statement of compensation to be inadequate.[4] The question of what constitutes a reasonable amount is an issue of fact for the trial court, and we will not overturn that finding unless it is clearly erroneous. Practice Book § 4061; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 219–22, 435 A.2d 24 (1980).

---

[3] General Statutes § 8-133 provides: "COSTS TAXABLE AGAINST AGENCY. If, as the result of any review under the provisions of section 8-132, the applicant obtains an award from the court greater than the amount determined as compensation by the redevelopment agency, costs of court, including such appraisal fees as the court determines to be reasonable, shall be awarded to the applicant and taxed against the redevelopment agency in addition to the amount fixed by the judgment."

[4] The trial court also relied in part upon General Statutes § 52-257 (b) (5), which authorizes an award of costs for "maps, plans, mechanical drawings and photographs, necessary or convenient in the trial of any action," in support of its award of partial reimbursement for engineering fees.

The trial court's finding that only $5000 of a $48,933 bill was reasonable is not clearly erroneous. Although the court did find the engineer's maps and plans useful, the court could reasonably have found that the engineer's fees were based in part on work that was not necessary for the court's determination of the value of the taken property. In addition, the court could reasonably have concluded that $48,933 was an excessive amount in light of the fact that the appraiser's total fee, which the court ordered reimbursed in full, was only $7700.

The judgment is affirmed.

In this opinion the other justices concurred.