MARY L. ALBAHARY ET AL. *v.* CITY OF BRISTOL
(AC 24345)

DiPentima, McLachlan and Peters, Js.

Argued May 27—officially released August 3, 2004

*Michael A. Zizka*, for the appellants (plaintiffs).

*Ben M. Krowicki*, with whom, on the brief, was *Susan Kim*, for the appellee (defendant).

*Opinion*

PETERS, J. For many years, leakage from a municipal landfill polluted the groundwater of adjoining property that presently is used for mining sand and gravel. As a result of an order issued by the state department of environmental protection, the municipality closed the landfill and, exercising its power of condemnation, took a long term easement over the polluted property. The property owners are entitled to compensation for this taking. The case raises two issues. One is the standard for determining compensation for pollution caused by a municipality that is exercising its power of condemnation. The other is the measurement of compensation for the taking of property that has present economic value without regard to its pollution. The trial court resolved both of these disputed issues in favor of the municipality. Under the circumstances of this case, we agree with the conclusions of the court and affirm its judgment.

On January 26, 1998, the plaintiffs, Mary L. Albahary, Patricia N. Gilbertson, J. Harwood Norton, Jr., Nancy S. Norton, Janet N. Sonstroem, Dawn B. Norton, Norton-Lazenby, LLC, and Irving H. Norton appealed to the trial court from a statement of compensation awarding them $50,000 for a partial taking of their Southington property by the defendant, the city of Bristol. The defendant maintained that the compensation award was just and fair. Although the trial court agreed in principle with the valuation formula proffered by the defendant, it concluded that the defendant had undervalued the plaintiffs' damages and awarded them $114,480 plus costs and interest in the amount of $18,705.66.[1] In so

---

[1] The court found that the fair market value of the property before the taking, in its polluted condition, was $570,000. It found that the taking reduced this value by 20 percent to $455,520. To arrive at the latter figure, it took into account not only the diminution in value of the property taken

doing, however, the court rejected the plaintiffs' major claims for further compensation. The plaintiffs have appealed.

The underlying facts are undisputed. The plaintiffs are joint owners of 87.6 acres of unimproved property in Southington. The property, which is almost entirely in a residential zone, is taxed as open space land. Its northerly part, which abuts the landfill, consists of approximately forty-six acres that, since 1992, have been used for the mining of good quality sand and gravel. Its southerly part, approximately forty-two acres, consists of unimproved land.

The defendant's abutting landfill was operational from 1946 to 1997, when it was closed down by the state department of environmental protection (department) because of contaminating leachate generated at the site. The leachate polluted the groundwater on the plaintiffs' property so that it is not potable.

On October 24, 1995, the department and the defendant entered into a consent order in which the defendant conceded that "[t]he operation of a solid waste disposal area at the [landfill resulted] in a discharge of water, substance or materials, including but not limited to leachate, into the waters of the State."[2] The consent order required the defendant to undertake certain investigations and studies with regard to the landfill and to propose plans in order to remediate the leachate contamination that the landfill had caused. The consent order did not require the defendant to clean up the contamination. Instead, it gave the defendant the option to acquire control over all of the polluted groundwater

but also the taint of nearby contamination on the value of the property not taken. The defendant has not challenged the propriety of the court's revision of the condemnation award from $50,000, the amount in the original statement of compensation.

[2] Although not parties to the proceeding that resulted in the consent order, the plaintiffs do not claim that the consent order does not affect their rights.

rights or interests therein that were located within a certain "zone of influence" that included the property of the plaintiffs.

In 1996, the legislature enacted No. 96-12 of the 1996 Special Acts, to permit the defendant to acquire or to condemn property outside of its borders. This special act was intended to enable the defendant to comply with the consent order.[3]

On July 30, 1997, relying on the special act, the defendant began condemnation proceedings to take an easement over twenty-five acres of the plaintiffs' property. For a thirty-one year period, the easement permits the defendant to access the property to withdraw groundwater, to collect environmental data and to pump and treat groundwater so as to remediate the existing contamination. The defendant filed a certificate of taking with the clerk of the Superior Court and recorded the certificate in the Southington land records on September 17, 1997. In accordance with a statement of compensation, the defendant made a deposit of $50,000.

On January 26, 1998, the plaintiffs filed an appeal in the trial court to challenge the adequacy of the proffered compensation award. They made two claims. Their first claim was that, as a matter of law, their damages should be measured by a valuation formula compensating them for the pollution of their groundwater both before and after the taking of their property rights through eminent domain. Their second claim was that, as a matter of fact, the valuation of their property should take into account possible future uses of their property for purposes other than its present use for mining. The defendant disputed both of these claims.

---

[3] The plaintiffs challenged the validity of the special act by filing a motion for summary judgment in the Superior Court. In *Albahary* v. *Bristol*, Superior Court, judicial district of New Britain, Docket No. CV-0482781S (March 16, 1999) (24 Conn. L. Rptr. 293), the plaintiffs' motion was denied. The plaintiffs did not pursue this claim after the denial of their motion.

The trial court rendered a judgment deciding the plaintiffs' claim of law in favor of the defendant. It agreed with the defendant that the damages suffered by the plaintiffs as a result of the condemnation of their property were to be measured by comparing the value of their property at the time of the taking, in its polluted condition, with its value after the condemnation. It also agreed with the defendant that monetary compensation awarded to the plaintiffs for the easement that the defendant has taken should be based on the likelihood that the plaintiffs would continue to use their property for mining.

In the plaintiffs' appeal to this court, the issues they raise mirror those they raised at trial. They claim that the trial court's award of damages was inadequate because it failed to hold the defendant accountable for the pretaking contamination of their property and because it failed to recognize profitable uses to which their property might be put if it had not been polluted and condemned. We are not persuaded.

I

## THE SCOPE OF THE TAKING

The plaintiffs urge us to overturn the judgment of the trial court because, in their view, the court improperly confined its analysis of the damages they had suffered to a comparison between the value of their property in its polluted condition and its value after the taking of the easement. The plaintiffs argue that this formulation is improper because the groundwater on their property became polluted by the defendants' landfill long before the defendant exercised its legal power to condemn their property. In their view, in order to compensate them for the pretaking pollution of their property, they are entitled to damages derived from a comparison of the value of their property with clean groundwater and the value of their property after the taking.

The present case is not, however, the first instance of litigation between the parties about the economic consequences of pretaking pollution on the plaintiffs. In earlier litigation, in federal court, the plaintiffs presented functionally identical claims but were unable to prove that they had suffered measurable losses. Over the objection of the plaintiffs, the trial court in this case took the outcome of the federal case into account in deciding this case.

The plaintiffs' disagreement with the trial court can best be analyzed by considering separately the two questions of law that the plaintiffs have raised. First, in a condemnation action involving the taking of polluted property, is the amount of compensation always limited to a comparison between the value of the property at the time of the taking and its value after the taking? Second, may the amount of the compensation in such a condemnation action reflect the outcome of a prior adjudication of a claim for inverse condemnation based on the same pretaking contamination? Each of these questions raises an issue of law that is entitled to plenary review by this court. See *Del Core* v. *Mohican Historic Housing Associates*, 81 Conn. App. 120, 121–22, 837 A.2d 902 (2004). We conclude that the first should be answered in the negative and the second in the affirmative.

A

The centerpiece of the plaintiffs' argument of law is their contention that the court improperly limited the amount of the condemnation award to the difference between the values of their polluted property before and after the taking of the easement. The defendant responds that our Supreme Court has definitively decided this issue in its favor. We disagree with the defendant.

In *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, 256 Conn. 813, 776 A.2d 1068 (2001) (*ATC*), our Supreme Court held that "[t]he condemnor is acquiring property in a given condition, and with a value based on that condition. How the property got to be that way and who is responsible has nothing to do with that determination." (Internal quotation marks omitted.) Id., 837–38. The Supreme Court, therefore, adopted a valuation formula that compared polluted property before a taking with polluted property after the taking. Id., 832–34.

We are not persuaded that *ATC* controls this case. *ATC* is factually distinguishable because it involved a case in which the property had been polluted by someone *other* than the condemnor. Id., 817. Although the Supreme Court might extend the *ATC* valuation formula to apply to a case in which the condemnor has itself caused the contamination, it has not yet done so. Indeed, as the court noted in *ATC*, "[t]he question of what is just compensation is an equitable one rather than a strictly legal or technical one." (Internal quotation marks omitted.) Id., 828. That is not a novel proposition. See, e.g., *Commissioner of Transportation* v. *Towpath Associates*, 255 Conn. 529, 540, 767 A.2d 1169 (2001); *Alemany* v. *Commissioner of Transportation*, 215 Conn. 437, 444, 576 A.2d 503 (1990).

Extension of the valuation formula of *ATC* to a case such as this one would be difficult to reconcile with the law of inverse condemnation. Both direct condemnation claims and inverse condemnations are based on article first, § 11, of our state constitution. Pursuant to that provision, a property owner is entitled to compensation whenever the action of a governmental defendant has interfered, to a substantial degree, with the value or the use of private property. *Tamm* v. *Burns*, 222 Conn. 280, 284, 610 A.2d 590 (1992); see also Conn. Const., art. I, § 11. Inverse condemnation may occur

even if the governmental action does not render the property entirely valueless. "It is sufficient if use of [the] property is severely restricted and its profitability greatly reduced as a result of the action of the government." *Citino* v. *Redevelopment Agency*, 51 Conn. App. 262, 278–79, 721 A.2d 1197 (1998).

In sum, we agree with the plaintiffs that, in principle, they had a right to be compensated for the totality of the damage caused to their property by the defendant's contamination of their groundwater. We can see no reason why a condemnation award may not take account of pretaking contamination caused by the condemnor.

B

The trial court's decision not to award the plaintiffs damages for pretaking contamination in this case, however, was grounded not only in the law of condemnation but also in the law of collateral estoppel. The plaintiffs maintain that their condemnation award must compensate them for losses arising out of the pretaking contamination of their groundwater despite the fact that they unsuccessfully pursued a claim for inverse condemnation in their federal court action. Like the trial court, we disagree.

Before the present state court condemnation proceedings had begun, the plaintiffs filed an action against the defendant in the United States District Court for the District of Connecticut (federal court). They sought damages and injunctive relief for the injury that they had suffered as a result of the landfill's contamination of the groundwater on their property prior to the condemnation.

The federal case was decided after the filing of the complaint in this present condemnation case. The federal court held that the plaintiffs had proven most of

their statutory and common-law claims, but not their claim of inverse condemnation.[4] With respect to that claim, the court found that the plaintiffs' receipt of $2.65 million from their mineral extraction contracts demonstrated that the contamination caused by the defendant had not deprived the plaintiffs of the reasonable use of their property. The court denied the plaintiffs any damages even for the claims that they had proven because "the legal remedy of money damages to compensate the current landowners for diminished value of their property is inadequate and highly speculative . . . ." Instead, the court ordered the defendant to provide the plaintiffs with an alternate potable water source and to indemnify the plaintiffs against claims of environmental liability that might be raised by third persons.[5] No appeal was taken from this judgment.

We disagree with the plaintiffs' contention that the federal judgment is irrelevant to the resolution of the present case. On their face, the two actions involve litigation between the same parties about the same issue, namely, the damages attributable to the contamination of the groundwater on the plaintiffs' property by the defendant's landfill.

Pursuant to the doctrine of collateral estoppel or issue preclusion, the plaintiffs are precluded from reliti-

---

[4] The federal court decided that the plaintiffs had proven all but three of the claims contained in their ten count complaint. It held that the defendant had violated two federal environmental statutes, the Resource Conservation Recovery Act, 42 U.S.C. § 6901 et seq. and the Clean Water Act, 33 U.S.C. § 1251 et seq. It also held that the contamination of the plaintiffs' property was both a public and private nuisance, a trespass, an act of negligence and a violation of General Statutes §§ 22a-427 and 22a-16. It held, however, that the plaintiffs had not proven their claim of inverse condemnation and strict liability. Also, because the plaintiffs had not undertaken any remediation of their property, it dismissed their claims for remediation and containment costs under General Statutes § 22a-452.

[5] The defendant also was ordered to pay a fine of $69,350 to the federal treasury and to reimburse the plaintiffs for their attorney's fees and costs. The defendant has complied in full with the mandate of the federal court.

gating the federal court's denial of their inverse condemnation claim. "[C]ollateral estoppel, or issue preclusion, is that aspect of res judicata that prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties or those in privity with them upon a different claim. . . . An issue is *actually litigated* if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . 1 Restatement (Second), Judgments § 27, comment (d) (1982)." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Eflhimiou* v. *Smith,* 268 Conn. 499, 506–507, 846 A.2d 222 (2004); see also *Rinaldi* v. *Enfield,* 82 Conn. App. 505, 516, 844 A.2d 949 (2004). The plaintiffs' inverse condemnation claim indisputably was "actually litigated and necessarily determined" by the federal court.

Nonetheless, the plaintiffs maintain that they have the right to pursue their state claim despite the federal action because the latter action related only to damages for pretaking pollution. By contrast, they argue, the present action relates to damages for the continuing consequences of the pollution after the taking of the easement over their property. We are not persuaded.

The plaintiffs' argument might have merit if the plaintiffs were indeed limiting their present claim for valuation of their polluted property to an assessment of its value in its polluted condition at the time of the taking. The fact is, however, that in both courts, the plaintiffs' claim for recovery related to pretaking contamination of their property. That is the gist of the claim for damages that they pursued and failed to prove in the federal court and the gist of the claim for additional compensation that they are pursuing in this court.[6]

[6] It is perhaps easier to recognize the fallacy in the plaintiffs' argument by considering, hypothetically, the consequences of a federal court judgment awarding them $50,000 for the defendant's pretaking contamination of their property. Surely, the plaintiffs could not then be permitted to argue to the

The doctrine of collateral estoppel is equally applicable to the plaintiffs' other claims about pretaking contamination that were litigated in the federal court. As the trial court properly held, the injunction issued by the federal court provided the plaintiffs with a remedy designed to make them whole for all injuries other than those associated with the diminished value of their property as that value would be decided in the then forthcoming condemnation proceedings.

The plaintiffs read the federal court's judgment more narrowly. In their view, the federal court manifested its intention that its decision should have *no* effect on the present condemnation proceedings. Describing the injunctive relief awarded to the plaintiffs, the federal court stated that its purpose was to put the plaintiffs "in the position they would have occupied in the real estate market had the groundwater not been polluted by the Landfill." The court then stated: "[f]inally, the court makes clear that the injunctive remedy ordered is in addition to the moneys ordered to be paid in the state law condemnation action, which are intended to pay for the acquisition of rights to the groundwater beneath [the] plaintiffs' property. It is the intention of the court that those funds *not* be used to offset the costs of providing water to the [plaintiffs' property]. The form of injunctive relief ordered permits the state court condemnation proceeding and challenge to proceed without interference, direct or indirect, by the federal court, thus satisfying this court's comity concerns." (Emphasis in original.)

The plaintiffs argue that the phrase, "without interference, direct or indirect" should be understood to nullify the effect of the federal court's finding that the plaintiffs

condemnation court that the federal court's resolution of their claim of inverse condemnation was irrelevant to their claim for pretaking contamination.

had failed to prove their claim of inverse condemnation. The trial court disagreed and so do we.

The plaintiffs read the decision of the federal court as having determined only one issue of fact and one issue of law. In their view, the federal court decided only that the defendant had, in fact, caused the pollution of the plaintiffs' property and that it had done so unlawfully. That is not what the court said. It expressly held that the defendant would have to pay the costs of compliance with the terms of the federal injunction as well as the damages to be assessed in the present condemnation action. We are bound by the court's interpretation of its own opinion.

We conclude, therefore, that the judgment of the federal court has established, unequivocally and definitively, that the plaintiffs did not suffer any economic loss because of the pretaking pollution of the groundwater on their property. It follows that, in this action, the plaintiffs have no basis for arguing that their condemnation award must include compensation for pretaking pollution. No matter how the plaintiffs characterize their claim, the fact remains that groundwater pollution has not diminished the profits generated by the mining operations on their property.

Under these circumstances, we agree with the trial court's formula for valuing the damages to which the plaintiffs were entitled due to the taking of an easement on their property. The trial court properly measured these damages by a comparison between the value of the property at the time of the taking, albeit in its polluted condition, and its value after the taking, in its polluted condition.

## II

## VALUATION

Even if the trial court properly described the nature of the damage caused by the defendant's taking of an

easement on the plaintiffs' property, the plaintiffs argue that they are entitled to a new trial because the trial court made factual findings that unduly limited their recovery. Concededly, in order to prevail, the plaintiffs must demonstrate that the court's findings were clearly erroneous in light of the record as a whole. Practice Book § 60-5; see also *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980). We agree with the defendant that they have not made such a showing.

In a condemnation proceeding, a trial court must make an independent determination of value and fair compensation in light of all the circumstances. *Minicucci* v. *Commissioner of Transportation*, 211 Conn. 382, 388, 559 A.2d 216 (1989). "[B]ecause each parcel of real property is in some ways unique, trial courts must be afforded substantial discretion in choosing the most appropriate method of determining the value of a taken property." *French* v. *Clinton*, 215 Conn. 197, 200, 575 A.2d 686 (1990). "[T]he amount that constitutes just compensation is the market value of the condemned property when put to its highest and best use at the time of the taking." (Internal quotation marks omitted.) *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, supra, 256 Conn. 828. In deciding fair compensation, the court "must consider whether there was a reasonable probability that the subject property would be put to that use in the reasonably near future, and what effect such a prospective use may have had on the property's market value at the time of the taking." (Internal quotation marks omitted.) Id., 829.

The trial court made two significant findings that the plaintiffs contest. In accordance with a report of John Leary, an expert witness for the defendant, the court found that the highest and best use of the property at the time of its taking was its current use for open space and gravel and mineral mining. It further found that

there was a reasonable probability that the property would continue to be zoned for residential purposes, rather than becoming used for industrial purposes, as the plaintiffs argued.

The plaintiffs based their argument to the contrary on the following. The mining contracts on their property were set to expire in four years . In the future, mining activities on their property might be more problematic. A Southington development plan contemplated future use of the plaintiffs' property for industrial development.[7]

The court nonetheless found that there was no reasonable probability that the plaintiffs' property would be reclassified from a residential zone to an industrial zone. It noted that the plaintiffs had taken no steps to facilitate a change in zone designation.[8] It observed that the plaintiffs' property was assessed and taxed as open space land. Relying on its own site visits, it found that the plaintiffs' property and neighboring properties presently were being used for residential purposes.[9] These findings were not clearly erroneous.

At best, the plaintiffs' claim demonstrates that the court had before it conflicting evidence about the highest and best use of the property, in the present and in the reasonably near future. See *Northeast Ct. Economic*

[7] The plaintiffs' analysis of the negative impact that pollution of their groundwater might have on future industrial development of their property pays little, if any, attention to their access to clean water under the terms of the federal court injunction.

[8] The federal court held that the plaintiffs took no steps to remediate the pollution of the groundwater on their property. Contrary to the plaintiffs' claim in this court, filing their federal action is not an equivalent to an effort to make their groundwater potable.

[9] The plaintiffs maintain that their property is surrounded in its entirety by nonresidential uses. They asked the trial court for an articulation of the basis for its finding to the contrary, but the court did not do so. The plaintiffs did not file a motion for review of the denial of their motion. See Practice Book § 66-7.

*Alliance, Inc.* v. *ATC Partnership*, supra, 256 Conn. 829. Although no Connecticut appellate court has previously so decided, we agree with the position taken by a majority of courts elsewhere that the plaintiffs bore the burden of proof on this issue of fact. See, e.g., *United States ex rel. Tennessee Valley Authority* v. *Powelson*, 319 U.S. 266, 273, 63 S. Ct. 1047, 87 L. Ed. 1390 (1943); *Devils Lake* v. *Davis*, 480 N.W.2d 720, 725 (N.D. 1992); *Conner* v. *Board of County Commissioners*, 54 P.3d 1274, 1284 (Wyo. 2002).[10] The plaintiffs did not meet their burden of proving the reasonable *probability* that the property condemned by the defendant would be used for purposes other than mining in the near future.

We conclude, therefore, that both as a matter of law and as a matter of fact, the judgment of the trial court must be upheld. Private parties whose property becomes polluted because of the illegal conduct of their governmental neighbors of course have actionable claims. Here, however, as elsewhere, they must prove their damages. As this case illustrates, proof of damages for the taking of a long term easement is a difficult undertaking.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] See also *Sierra Vista* v. *Cochise Enterprises, Inc.*, 144 Ariz. 375, 381, 697 P.2d 1125 (Ariz. App. 1984); *La Plata Electric Assn., Inc.* v. *Cummins*, 703 P.2d 592, 595 (Colo. App. 1985), aff'd, 728 P.2d 696 (Colo. 1986) (en banc); *State Dept. of Transportation & Development* v. *Estate of Clark*, 432 So. 2d 405, 408 (La. App. 1983); *State Dept. of Highways* v. *Donnes*, 219 Mont. 182, 186, 711 P.2d 805 (1985); but see *West* v. *Dept. of Transportation*, 176 Ga. App. 806, 808, 338 S.E.2d 45 (1985) (burden of proof on condemnor on issue of damages); *State* v. *Amunsis*, 61 Wash. 2d 160, 164, 377 P.2d 462 (1963) (en banc) (no burden of proof instruction should be given regarding value of land taken).