## DIANA STARKS *v.* UNIVERSITY OF CONNECTICUT ET AL.
## (SC 17013)

Sullivan, C. J., and Borden, Katz, Palmer and Vertefeuille, Js.

Argued December 2, 2003—officially released July 6, 2004

*Howard B. Schiller,* for the appellant (plaintiff).

*Douglas L. Drayton,* for the appellees (defendants).

*Richard Blumenthal,* attorney general, and *William J. McCullough,* assistant attorney general, filed a brief for the state employees retirement commission.[1]

### Opinion

KATZ, J. The principal issue in this appeal is whether the receipt of state disability retirement benefits by the plaintiff, Diana Starks, must be considered in determining her discretionary benefits awarded pursuant to General Statutes (Rev. to 1989) § 31-308a[2] of the Workers'

---

[1] The brief on behalf of the state employees retirement commission was filed in response to this court's request. See footnote 6 of this opinion.

[2] General Statutes (Rev. to 1989) § 31-308a provides: "In addition to the compensation benefits provided by section 31-308 for specific loss of a member or use of the function of a member of the body, or any personal injury covered by this chapter, the commissioner, after such payments provided by said section 31-308 have been paid for the period set forth in said section, may award additional compensation benefits for such partial permanent disability equal to two-thirds of the difference between the wages currently earned by an employee in a position comparable to the position held by such injured employee prior to his injury and the weekly amount which such employee will probably be able to earn thereafter, to be determined by the commissioner based upon the nature and extent of the injury, the training, education and experience of the employee, the availability of work for persons with such physical condition and at the employee's age, but not

Compensation Act, contained in chapter 568 of the General Statutes.[3] The plaintiff appeals[4] from the decision of the compensation review board (review board) affirming the decision of the workers' compensation commissioner for the second district (commissioner) that ordered that the plaintiff receive a reduced § 31-308a benefit due to her receipt of state disability retirement benefits. The named defendant,[5] the University of Connecticut, argues that the decision of the review board was proper, and further argues that any other outcome would result in a double recovery for the plaintiff.[6] We conclude that, because the State Employees Retirement Act, codified in chapter 66 of the General Statutes,[7] already provides for a statutory offset of certain workers' compensation benefits; see General Statutes §§ 5-169 (g) and 5-192p (d); see footnotes 23 and 24 of this opinion; in determining the plaintiff's § 31-308a benefit calculation, the commissioner should not have considered any amounts received as part of her

more than the maximum provided in section 31-309. If evidence of exact loss of earnings is not available, such loss may be computed from the proportionate loss of physical ability or earning power caused by the injury. The duration of such additional compensation shall be determined upon a similar basis by the commissioner."

[3] General Statutes § 31-275 et seq.

[4] The plaintiff appealed from the decision of the board to the Appellate Court and subsequently moved to transfer the case to this court. We granted the plaintiff's motion and transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

[5] In addition to the University of Connecticut, Berkley Administrators also is named as a defendant in this appeal. Because Berkley Administrators did not submit a separate brief to this court, for purposes of this opinion, we shall refer to the defendants in the singular.

[6] In an effort to determine whether, in fact, such an interpretation would result in a double recovery to the plaintiff, on December 15, 2003, after the present case was argued before this court, we issued an order requesting that the state employees retirement commission advise us of its practices in reducing state disability retirement benefits by the amount of any workers' compensation benefits that the employee has been awarded pursuant to § 31-308a.

[7] General Statutes § 5-152 et seq.

state disability retirement benefits. Accordingly, we reverse the decision of the review board.

The record reveals the following undisputed facts and procedural history. The plaintiff was employed by the state, at the University of Connecticut, on April 17, 1990, when she suffered a compensable injury that left her with a 25 percent permanent partial disability of her back. Her injury arose out of and during the course of her employment. Commencing February 7, 1995, she was awarded 130 weeks of permanent partial disability benefits pursuant to General Statutes (Rev. to 1989) § 31-308, as amended by Public Acts 1989, No. 89-36,[8] which entitles an employee who sustains a permanent disability to a specified body part to payment of a fixed amount of benefits. After her specific indemnity benefits expired, the plaintiff was awarded $150 per week

[8] General Statutes (Rev. to 1989) § 31-308, as amended by Public Acts 1989, No. 89-36, provides in relevant part: "(a) If any injury for which compensation is provided under the provisions of this chapter results in partial incapacity, there shall be paid to the injured employee a weekly compensation equal to sixty-six and two-thirds per cent of the difference between the wages currently earned by an employee in a position comparable to the position held by such injured employee prior to his injury and the amount he is able to earn after such injury, except that when (1) the physician attending an injured employee certifies that such employee is unable to perform his usual work but is able to perform other work, (2) such employee is ready and willing to perform such other work in the same locality and (3) no such other work is available, such employee shall be paid his full weekly compensation subject to the provisions of this section. In either of the above cases, such compensation shall in no case be more than the maximum weekly benefit rate set forth in section 31-309 and shall continue during the period of partial incapacity but no longer than seven hundred and eighty weeks. If the employer procures for an injured employee employment suitable to his capacity, the wages offered in such employment shall be taken as the earning capacity of the injured employee during the period of such employment.

"(b) With respect to the following-described injuries the compensation, in addition to the usual compensation for total incapacity but in lieu of all other payments for compensation, shall be sixty-six and two-thirds per cent of the average weekly earnings of the injured employee, but in no case more than the maximum weekly benefit rate set forth in section 31-309, or less than fifty dollars weekly . . . ."

in benefits from August 6, 1997, through May 5, 2001, pursuant to § 31-308a, which permits the commissioner, on a discretionary basis, to grant additional benefits "equal to two-thirds of the difference between the wages currently earned by an employee in a position comparable to the position held by such injured employee prior to his injury and the weekly amount which such employee will probably be able to earn thereafter . . . ." General Statutes (Rev. to 1989) § 31-308a.[9] The parties stipulated that a person engaged in the plaintiff's former position earned $31,325 annually at the time of the commissioner's decision, a weekly average of $602.40. The most recent medical evidence available indicated that the plaintiff's injury prevented her from working more than four to six hours at a time. The plaintiff's last position paid $8.50 an hour, which would entitle her to gross earnings of $255 per week if she worked thirty hours per week. On the basis of these facts, the commissioner determined that the wage differential between the plaintiff's actual earning capacity and the salary paid for her preinjury position was $347.40 per week.

The plaintiff retired from state service in 1996 and began receiving service-connected disability retirement benefits from the state amounting to $1396.72 per month, or $324.82 per week. In proceedings before the commissioner, the defendant argued that the plaintiff's disability retirement pension should be considered in determining her § 31-308a benefit and that such benefit should be reduced accordingly. The commissioner agreed, and, as a result of the offset of her disability retirement benefits against her postinjury earning

---

[9] Currently, General Statutes § 31-308a (a) provides that additional benefits for partial permanent disability shall be: based upon 75 percent of the difference between preinjury and postinjury after-tax earnings of the employee; limited in duration to the lesser of either the span of the employee's permanent partial disability award or 520 weeks; and available only to claimants "who are willing and able to perform work in [Connecticut]."

capacity, the commissioner determined that the plaintiff received $22.58 per week less than the amount currently being earned by employees in her former position, and subsequently awarded § 31-308a benefits in the amount of $15.05 per week for fifty-two weeks commencing May 6, 2001.

The plaintiff filed a petition for review on December 6, 2001, disagreeing with the commissioner's interpretation of § 31-308a and the commissioner's subsequent calculation of her benefits. In an opinion issued February 13, 2003, the review board rejected the plaintiff's contentions, determining that the offset of disability retirement benefits was appropriate under its prior ruling in *Iannarone* v. *Dept. of Mental Retardation*, 4138 CRB-7-99-10 (June 15, 2001), in which the review board held that a state disability pension should be included in the amount a claimant is " 'able to earn' " for purposes of § 31-308a. Quoting *Iannarone*, the review board noted that " 'the [wage replacement] benefits sought . . . by the claimant are meant to replenish a former income source . . . that is already being replenished in part by a pension from that same entity.' " In further support of its decision, the review board stated that General Statutes § 31-314[10] mandates such an offset because, "§ 31-314 requires that the fixing of compensation under [c]hapter 568 duly allow[s] for any sum that an employer has paid to an injured employee on account of her injury." Finally, the review board rejected the plaintiff's claim that her state disability retirement benefits were in the nature of "fringe benefits" under General Statutes (Rev. to 1989) § 31-284b,[11] which requires cov-

[10] General Statutes § 31-314 provides: "In fixing the amount of any compensation under this chapter, due allowance shall be made for any sum which the employer has paid to any injured employee or to his dependents on account of the injury, except such sums as the employer has expended or directed to be expended for medical, surgical or hospital service."

[11] General Statutes (Rev. to 1989) § 31-284b (a) provides: "In order to maintain, as nearly as possible, the income of employees who suffer employment-related injuries, any employer, as defined in section 31-275, who pro-

ered employers to maintain "equivalent insurance coverage or welfare fund payments or contributions while the employee is eligible to receive or is receiving workers' compensation . . . ."

On appeal, the plaintiff claims that benefits received under the state disability retirement plan should not be considered part of "the weekly amount which such employee will probably be able to earn thereafter" under § 31-308a. Additionally, the plaintiff argues that her retirement benefits should not be credited as an "advance" by her employer pursuant to § 31-314. The plaintiff also claims that her receipt of state disability retirement benefits are in the nature of a "fringe benefit" and are protected by § 31-284b. Lastly, the plaintiff contends that the state disability retirement statutory scheme requires such benefits to be offset by the receipt of certain workers' compensation benefits, not the other way around.

"As a threshold matter, we set forth the standard of review applicable to workers' compensation appeals. . . . It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and [the review] board." (Internal quotation marks omitted.) *Kuehl* v. *Z-Loda Systems Engineering, Inc.*, 265 Conn. 525, 532, 829 A.2d 818 (2003). "It is well settled that we do not defer to the [review] board's construction of a statute—a question of law—when, as in the present case, the provisions at issue previously

vides accident and health insurance or life insurance coverage for any employee or makes payments or contributions at the regular hourly or weekly rate for full-time employees to an employee welfare fund, as defined in section 31-53, shall provide to such employee equivalent insurance coverage or welfare fund payments or contributions while the employee is eligible to receive or is receiving workers' compensation payments pursuant to this chapter, or while the employee is receiving wages under a provision for sick leave payments for time lost due to an employment-related injury."

have not been subjected to judicial scrutiny or when the [review] board's interpretation has not been time tested." *Rayhall* v. *Akim Co.*, 263 Conn. 328, 354, 819 A.2d 803 (2003). Accordingly, because this issue is one of first impression for our courts, our review is plenary.

"We begin with our well established principles of statutory interpretation in analyzing the [plaintiff's] claim. Our legislature recently has enacted No. 03-154, § 1, of the 2003 Public Acts, which provides: 'The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered.' In the present case, the relevant statutory text and the relationship of that text to other statutes do not reveal a meaning that is plain and unambiguous." *Bergeson* v. *New London*, 269 Conn. 763, 769–70, 850 A.2d 184 (2004). Accordingly, in ascertaining the meaning of § 31-308a, we will "look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation . . . ." *Jones* v. *Kramer*, 267 Conn. 336, 343, 838 A.2d 170 (2004).

Because "[i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure coherency of our construction"; *Schiano* v. *Bliss Exterminating Co.*, 260 Conn. 21, 42, 792 A.2d 835 (2002); we will begin with a basic overview of the workers' compensation statutory scheme. "Benefits available under the [Workers' Compensation Act] serve the dual function of compensating for the disability arising from the injury and for the loss of earning power resulting from that injury. . . . Compensation for the disability takes the form of

payment of medical expenses . . . and specific indemnity awards, which compensate the injured employee for the lifetime handicap that results from the permanent loss of, or loss of use of, a scheduled body part. . . . [S]ee General Statutes § 31-308 (b) (loss of or loss of use of member) and (d) (scarring); see also 4 A. Larson & L. Larson, Workers' Compensation Law (2002) § 80.04, p. 80-12 ([p]ermanent partial schedule awards are based on medical condition after maximum improvement has been reached and ignore wage loss entirely). . . .

"Compensation for loss of earning power takes the form of partial or total incapacity benefits. . . . Incapacity . . . means incapacity to work, as distinguished from the loss or loss of use of a member of the body. . . . Partial incapacity benefits are available when the employee is able to perform some employment, but [is] unable fully to perform his or her customary work . . . . Accordingly, partial incapacity benefits are available when an actual wage loss has resulted from the injury, providing a wage supplement for the difference between the wages the worker would have earned, but for the injury, and the wages the worker currently is able to earn. General Statutes §§ 31-308 (a) and 31-308a (a) . . . . The duration of partial incapacity benefits is limited by statute. . . . Conversely . . . [t]otal incapacity benefits, unlike partial incapacity benefits, are unrestricted as to duration." (Citations omitted; internal quotation marks omitted.) *Rayhall* v. *Akim Co.*, supra, 263 Conn. 349–51.

In the present case, when the plaintiff sustained her injury, she was awarded 130 weeks of permanent partial disability benefits pursuant to § 31-308. After her § 31-308 benefits had been exhausted, the plaintiff requested additional discretionary benefits pursuant to § 31-308a. The version of § 31-308a in effect at the time of the plaintiff's injury provided: "In addition to the compensa-

tion benefits provided by section 31-308 for specific loss of a member or use of the function of a member of the body . . . the commissioner, after such payments . . . have been paid for the period set forth . . . may award additional compensation benefits for such partial permanent disability equal to two-thirds of the difference between the wages currently earned by an employee in a position comparable to the position held by such injured employee prior to his injury and the weekly amount which such employee will probably be able to earn thereafter, to be determined by the commissioner based upon the nature and extent of the injury, the training, education and experience of the employee, the availability of work for persons with such physical condition and at the employee's age, but not more than the maximum provided in section 31-309. . . . The duration of such additional compensation shall be determined upon a similar basis by the commissioner." General Statutes (Rev. to 1989) § 31-308a. The fundamental issue in this appeal is whether the disability retirement benefits payable under the State Employees Retirement Act should be treated as part of the "weekly amount which [an] employee will probably be able to earn thereafter" by a commissioner when he or she is considering the amount of additional benefits to award under § 31-308a. Although the plaintiff's arguments on these matters are informative, and we will address them accordingly, we note that, it is because the state disability retirement statutes expressly mandate the offset of certain types of workers' compensation benefits; see General Statutes §§ 5-169 (g) and 5-192p (d); see footnotes 23 and 24 of this opinion; that we are convinced ultimately of the wisdom of the plaintiff's position.

"As with all issues of statutory interpretation, we look first to the language of the statute." (Internal quotation marks omitted.) *Spears* v. *Garcia*, 263 Conn. 22, 28–29, 818 A.2d 37 (2003). In the present case, the relevant

statutory language provides that benefits are "to be determined . . . based upon the nature and extent of the injury, the training, education and experience of the employee, [and] the availability of work for persons with such physical condition and at the employee's age . . . ." General Statutes (Rev. to 1989) § 31-308a. A fundamental rule of statutory construction dictates that, ordinarily, where the legislature has mandated specific factors to be taken into consideration in reaching a result, other factors cannot be considered. *State* v. *Vickers*, 260 Conn. 219, 225, 796 A.2d 502 (2002) ("[w]e have stated that [u]nless there is evidence to the contrary, statutory itemization indicates that the legislature intended [a] list to be exclusive" [internal quotation marks omitted]). In the present case, because § 31-308a expressly enumerates several factors for the commissioner to consider, none of which involves external economic concerns, but instead reflect on a particular claimant's injury and subsequent ability to work, the plaintiff argues that a commissioner's award is confined to the consideration of such factors. The defendant responds by pointing out that such benefits are purely discretionary; see General Statutes (Rev. to 1989) § 31-308a ("the commissioner . . . *may* award additional compensation benefits" [emphasis added]); and therefore, a commissioner has very broad discretion in determining a § 31-308a award, and is not confined solely to the enumerated factors set forth in the statute. As both the plaintiff and the defendant are basically correct, insofar as they rely on common principles, we must look beyond such generalized arguments in order fully to determine this issue.

The plaintiff next argues that the review board's decision in *Iannarone* v. *Dept. of Mental Retardation*, supra, 4138 CRB-7-99-10, and its decision in this case, improperly relied on a particular definition of the word "earnings" that distorts the statutory language. First, the

plaintiff argues that the statutory phrase, "the weekly amount which such employee will probably be able to earn thereafter"; General Statutes (Rev. to 1989) § 31-308a; concerns a claimant's " 'ability to earn' " rather than a claimant's " 'earnings.' " In *Iannarone*, the review board construed the state disability retirement benefits a claimant was receiving as "earnings," in part, by relying on a definition of that term, contained in Black's Law Dictionary (5th Ed. 1979), as "the gains of a person derived from his services [or] labor without the aid of capital; money or property gained or merited by labor, service, or the performance of something." *Iannarone* v. *Dept. of Mental Retardation*, supra, pp. 4–5. The review board applied a similar definition in this case. The plaintiff contends, however, that the state disability retirement benefits she receives are not payable to her as a result of any current services, labor or performance, but on account of her past services and as a retirement benefit, and therefore, the benefits are not "earnings." Instead, the plaintiff contends that these benefits are on a par with Social Security or payments from a private disability insurance policy.

Moreover, the plaintiff points out that the term "earning capacity" is also defined in Black's Law Dictionary (6th Ed. 1990) as "the capability of [a] worker to sell his labor or services in any market reasonably accessible to him, taking into consideration his general physical functional impairment resulting from his accident, any previous disability, his occupation, age at time of injury, nature of injury and his wages prior to and after the injury . . . ." The plaintiff thus contends that her "ability to earn" does not generate her state disability retirement benefits.

In addition, the plaintiff points us to definitions of "able" and "earn" to further support her position. She points out that we previously have defined the term earn as "to acquire by labor, service, or performance";

(internal quotation marks omitted) *Hartford Electric Light Co.* v. *McLaughlin*, 131 Conn. 1, 5, 37 A.2d 361 (1944); and that the Random House Dictionary of the English Language (2d Ed. 1987) defines "able" as "having necessary power, skill, resources or qualifications . . . ." The plaintiff argues that these definitions also demonstrate why state disability retirement benefits should not be considered under § 31-308a, as such benefits are not acquired by labor, services or performance rendered after injury. In fact, the plaintiff argues, a worker who is disabled is " 'unable' " rather than " 'able' " to earn, to the extent of their disability.

The plaintiff also draws our attention to the term "thereafter" in the statute, and suggests that the term be given its proper import. The plaintiff argues that § 31-308a specifically deals with the ability to earn *after* sustaining an injury, because the term "thereafter" obviously refers to the time after the claimant's injury. According to the plaintiff, state disability retirement benefits cannot be considered part of what a worker is "able to earn thereafter"; General Statutes (Rev. to 1989) § 31-308a; i.e., postinjury, because such benefits are not based upon any activity of the claimant *after* his or her injury, but are premised exclusively upon services performed *prior* to the injury, as well as the claimant's age.[12] See General Statutes §§ 5-169 (a) and (b) and 5-192p (a) and (c). Therefore, the plaintiff

[12] The plaintiff also argues that the broad definition of "earnings" relied upon by the review board in *Iannarone* as "money or property gained or merited by labor, service, or the performance of something"; *Iannarone* v. *Dept. of Mental Retardation*, supra, 4138 CRB-7-99-10, p. 5; is illogical when applied to other situations. For example, an employee can become eligible for state disability retirement benefits as a result of injuries *not* sustained in the course of employment. See General Statutes §§ 5-169 (a) and 5-192p (a). Therefore, the plaintiff argues, *Iannarone* would apply not only to service-connected state disability retirement benefits, but also to state retirement benefits awarded based upon years of service unrelated to disability.

argues, state disability retirement benefits should not be deemed "earnings."

We find these arguments by the plaintiff to be persuasive, particularly in light of the legislative history of § 31-308a. Section 31-308a was enacted in 1967 in order to provide workers' compensation commissioners the ability to grant supplemental benefits to certain claimants who required additional assistance. See Public Acts 1967, No. 842, § 25. "This section gives the commissioners authority to provide additional payments to workers who have exhausted their specific benefits, based upon the employee's injury, the availability of work for persons with such disability and the employee's training, education, experience and age. . . . [T]he present law with its specific payments for injuries does not at all times take into account that each man is a separate being and no one formula can be applied to determine what his true damages have been. This section gives the commissioners leeway to apply equity to the case . . . ." 12 H.R. Proc., Pt. 9, 1967 Sess., p. 4043, remarks of Representative Paul Pawlak, Sr. Although there have been changes made to the statute since its enactment, the operative language at issue here has remained relatively unchanged.[13] From comments made by the legisla-

---

[13] See Public Act 842 (original formulation involved "the difference between the average weekly earnings of the employee and the weekly amount which the employee will probably be able to earn thereafter"); Public Acts 1969, No. 696, § 8 (modified formula to be based upon two thirds of difference); Public Acts 1979, No. 79-376, § 76 (modified description of "average weekly earnings of the employee" to "wages currently earned by an employee in a position comparable to the position held by such injured employee prior to his injury"); Public Acts, Spec. Sess., June, 1991, No. 91-12, § 52 (altered two-thirds formula to 80 percent; added that wages would be reduced by federal tax and federal Insurance Contributions Act deductions; and changed maximum benefit allowed from "not more than the maximum provided in [§] 31-309" to "one hundred per cent, raised to the next even dollar, of the average weekly earnings of production and related workers in manufacturing in the state, as determined in accordance with . . . [§] 31-309"); Public Acts 1993, No. 93-228, § 20 (amended formula from 80 percent of difference in earnings to 75 percent of difference; added deduction from wages for state taxes; reduced maximum duration for bene-

ture at times in which § 31-308a was amended, it appears that in calculating benefits, the legislature was concerned, not with a broad all-inclusive definition of "earnings," but intended the formula to reflect the difference between the *actual wages* the claimant had earned from his employer before his injury and the wages the claimant would be able to earn after his injury. See 13 H.R. Proc., Pt. 8, 1969 Sess., p. 4012, remarks of Representative Dominic J. Badolato ("[§] 8 provides for an award of two-thirds of the difference between the pay earned after the accident over what [claimant] was earning before"); Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 1, 1979 Sess., p. 282, remarks of Norman Zolot, counsel for the Connecticut State Labor Council, AFL-CIO ("[claimant] gets [two-thirds] of the difference between his old job and his new job"); Conn. Joint Standing Committee Hearings, supra, p. 299, remarks of James Stewart ("a worker would receive two-thirds of the difference between what he was receiving on the lower paying job and what he actually would have earned in the previous position"); 36 H.R. Proc., Pt. 18, 1993 Sess., p. 6188, remarks of Representative Mary U. Eberle ("wage differential for the time [the employee] can return to work, but [the employee] can't earn as much as they did before"). The legislature consistently has viewed § 31-308a as a "wage differential benefit" statute, and thus we view the statute's parameters as referring narrowly to "wages" as opposed to a more expansive term such as "earnings." See 36 H.R. Proc., supra, pp. 6143, 6148, 6253, remarks of Representative Michael P. Lawlor. We find persuasive evidence to support the plaintiff's contention that "[t]he additional benefits for a permanent partial disability, awarded at the

---

fits from 780 weeks to 520 weeks or duration of the claimant's permanent partial disability award, whichever is less; prohibited award to claimants not willing and able to work in Connecticut; and limited award to cases where nature of injury and its effect on claimant's earning capacity warrant award).

discretion of a commissioner under section 31-308a, are designed to compensate a worker for his or her lost earning capacity"; Connecticut General Assembly, Legislative Program Review and Investigations Committee, Workers' Compensation in Connecticut (January 1991) p. 89; and are not meant to encompass all "earnings" of the claimant in its formula.[14]

In determining that the plaintiff's state disability retirement benefits must be included in her § 31-308a benefits calculation, the review board additionally relied on General Statutes § 31-314, which provides: "In fixing the amount of any compensation under this

[14] The plaintiff also contends that the relevant statutory language already has been reviewed and interpreted. In *Ferrara* v. *Clifton Wright Hat Co.*, 125 Conn. 140, 142, 3 A.2d 842 (1939), the claimant sought benefits that allowed "half of the difference between his average weekly earnings before the injury and the amount he is able to earn thereafter." (Internal quotation marks omitted.) General Statutes (1930 Rev.) § 5237, the statute at issue in *Ferrara*, was the predecessor to § 31-308 (a), which provides compensation for partial incapacity. In *Ferrara*, this court interpreted the phrase " '[a]ble to earn,' " as applied to the situation in which a claimant is not employed " 'thereafter,' " as meaning "the amount he is capable of earning if employed—the equivalent of earning capacity." *Ferrara* v. *Clifton Wright Hat Co.*, supra, 142. The plaintiff argues that, because this language is identical to the language at issue in the present case, and because the application of § 31-308 (a) to wage loss due to partial disability is consonant with § 31-308a, and because we already have interpreted this phrase, there is no justification for the review board to ignore this precedent and "inject into its analysis the nonstatutory term 'earnings.' " The review board responds to this argument by pointing out that this court's focus in *Ferrara* involved a claimant who had been denied a finding of permanently impaired earning capacity despite his inability either to continue his former work as a hatter or to obtain other employment, and not a situation, such as in the present case, involving the receipt of a benefit from an employer. Although this is true, we note that the language at issue in *Ferrara* sheds some light on the statutory language in the present case because it involved a benefit calculation based on "half of the difference between [the employee's] average weekly earnings before the injury and the amount he is able to earn thereafter." (Internal quotation marks omitted.) *Ferrara* v. *Clifton Wright Hat Co.*, supra, 142. To the extent that such language is the same as that at issue here, *Ferrara* supports our reading that such language refers to a claimant's earning capacity rather than a claimant's earnings.

chapter, due allowance shall be made for any sum which the employer has paid to any injured employee or to his dependents on account of the injury, except such sums as the employer has expended or directed to be expended for medical, surgical or hospital service." The plaintiff argues that her state disability retirement benefits, which are maintained by the state treasurer for the state employees retirement commission, should not be considered payments "by the employer," here, the named defendant, because the disability retirement benefits are paid from separate funds that are not under the control of the university.[15] The defendant argues that the review board's reliance on § 31-314 to bolster its decision was proper. The defendant contends that "[t]he true issue is not which branch of the state pays the plaintiff's disability retirement pension but, rather, that the payment is directly based on the injury she sustained out of and in the course of her employment with the state." Additionally, the defendant argues that § 31-314 refers to any sum paid "on account of the injury" and therefore includes the plaintiff's state disability retirement benefits because such benefits are paid "on account of," or *because of,* the plaintiff's injury; if the plaintiff had not sustained the injury, she would not have received such benefits. The plaintiff responds that § 31-314 is not meant to apply in her circumstance, but is meant to govern true "advance payments" made by an employer to his employee.

We note that there is only limited guidance available from case law regarding § 31-314. In *Loftus* v. *Vincent,* 49 Conn. App. 66, 73, 713 A.2d 892 (1998), the Appellate Court referenced § 31-314 as providing statutory evi-

---

[15] The plaintiff further argues that the defendant's interpretation would lead to absurd results. For example, if an employer paid Social Security contributions on behalf of an employee, and the employee subsequently received Social Security benefits, the employer could be given credit for such contributions under § 31-314.

dence that the workers' compensation scheme prohibited double recovery. The employee in *Loftus* had received workers' compensation benefits as a result of an injury he sustained at work, and was later awarded over $12,000 in back wages as a result of the employer's improper retaliatory discharge under General Statutes § 31-290a.[16] Id., 70–71, 72. The Appellate Court affirmed the commissioner's finding of retaliatory discharge, but reversed the award of back wages because of the commissioner's failure to offset, or make "due allowance," as required by § 31-314, for the workers' compensation payments made by the employer during the plaintiff's disability. Id., 74. It is noteworthy that in *Loftus*, the offset involved one award of chapter 568 benefits against another for the same period, whereas the present case involves the offset of sums paid by a separate agency under a distinctly different benefit system.

Similarly, *Jackson* v. *Berlin Construction Co.*, 93 Conn. 155, 105 A. 326 (1918), is of little help. Therein, we determined that General Statutes (1918 Rev.) § 5354 (presently § 31-314) did not authorize the crediting of payments made to injured employees, *before* their deaths, against any compensation awarded to an employee's dependents *after* that employee's death. Id., 158–60. In reaching that conclusion, this court relied, in part, on the heading of the statute, "[a]llowance for advance payments," which is the same heading as in the current version of the statute. See id., 160. "The heading of the section . . . expresses the purpose of the section: the payment upon an obligation before it was due or determined. . . . The employer may make advance payments to the employee or to the dependent,

---

[16] General Statutes § 31-290a (a) provides: "No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter."

and this section intended to give him *the right to credit* upon the amount found due the employee, *the advance payments made* by the employer . . . ." (Emphasis added.) Id.

We note further that the legislative history of § 31-314 also fails to shed light on the language in question. The section was enacted as part of the original Workers' Compensation Act in 1913, and the language of the statute has remained almost unchanged since its inception. See Public Acts 1913, c. 138, § 14; Public Acts 1961, No. 491, § 37. There is no legislative history referencing any specific intent in enacting this provision. As in *Jackson* v. *Berlin Construction Co.*, supra, 93 Conn. 160, we look to the statute's heading for guidance. "The title and stated purpose of legislation are, while not conclusive, valuable aids to construction. *Anderson* v. *Ludgin*, 175 Conn. 545, 554, 400 A.2d 712 (1978) . . . . Where, however, the language of the act is clear and not subject to interpretation, titles are of less significance. *Algonquin Gas Transmission Co.* v. *Zoning Board of Appeals*, 162 Conn. 50, 55, 291 A.2d 204 (1971). Given the . . . language in the present statute, we consider the title of some assistance in our construction." (Citations omitted; internal quotation marks omitted.) *Peck* v. *Jacquemin*, 196 Conn. 53, 68 n.17, 491 A.2d 1043 (1985). Because § 31-314 is captioned "[a]llowance for advance payments," we find persuasive the plaintiff's argument that the statutory phrase "any sum . . . paid . . . on account of the injury" means something other than payments made *because of* the employee's injuries. Instead, we read payments made "on account of" to mean those payments paid on credit, or in advance of, any sums that subsequently become payable by the employer. "Advances may take several forms. The most common is the situation where an employer or insurer agrees to make some payment on a without prejudice basis pending their investigation as to whether to accept

the claim as compensable or not. The advance is made without admitting liability and, if the claim is later accepted as compensable, the amount advanced is set off against any amount then due on the claim." J. Asselin, Connecticut Workers' Compensation Practice Manual (1985) p. 271 (discussing § 31-314). Based on this interpretation, payments received by the plaintiff as state disability retirement benefits would not qualify as "advance payments" made by the plaintiff's employer.

The gravamen of the defendant's arguments, and also the review board's decision in this matter, is the contention that, because the state, as the plaintiff's former employer, is paying a disability retirement pension to the plaintiff due to a compensable injury, she already is being compensated for her loss of earnings. The defendant argues that the statutory intent behind § 31-308a is to compensate for a loss of earnings due to a compensable injury. In the present case, because the plaintiff already is being compensated by the state for the identical loss under her disability retirement pension, without an offset, the result will be a double recovery. The defendant contends that the purpose of workers' compensation benefits is to make a person whole once she has sustained an injury that arises out of and in the course of her employment, not financial gain. The plaintiff responds to this concern by arguing that there would be no double recovery in the present case because the statutory scheme explicitly requires that workers' compensation benefits be offset against state disability retirement benefits and not the other way around. In other words, when the retirement commissioner, as mandated by the legislature, deducts from the plaintiff's state disability retirement benefits the amount she receives from workers' compensation bene-

fits, there will be no double recovery. We agree with the plaintiff.[17]

The State Employees Retirement Act originated in 1919 and consisted of a single paragraph. Public Acts 1919, c. 210. Far from its humble beginning, it currently sets forth a comprehensive retirement system that provides benefits to a broad range of state employees. It is administered by the state employees retirement commission (retirement commission). See General Statutes § 5-155a. Benefits are payable from funds held in a separate retirement fund held by the state treasurer. See General Statutes § 5-156. The system is funded on an actuarial reserve basis from the state's general fund; therefore, retirement funds are not paid directly by any employing department for which an employee has worked. See General Statutes § 5-156a. There are two tiers in the state retirement plan. Tier I is set forth at General Statutes §§ 5-157 to 5-192d inclusive. Tier II is set forth at General Statutes §§ 5-192e to 5-192x inclusive. See General Statutes § 5-192f (e) and (f). Tier II primarily covers employees appointed after January 1, 1984. See General Statutes § 5-192g. There are a few

---

[17] The plaintiff also argues that disability retirement benefits are "fringe benefits" protected by General Statutes (Rev. to 1989) § 31-284b (a), which seeks to "maintain, as nearly as possible, the income of employees who suffer employment-related injuries" by requiring covered employers who provide "accident and health insurance or life insurance coverage for any employee or makes payments or contributions at the regular hourly or weekly rate for full-time employees to an employee welfare fund" to provide equivalent coverage while the employee is receiving workers' compensation payments. See footnote 11 of this opinion. In essence, the plaintiff claims that her state disability retirement benefits constitute a form of insurance because the state is paying them, not in its role as an employer, but rather in its capacity as a self-insurer. Therefore, the plaintiff opines, § 31-284b protects these benefits, and the employer is required to maintain them while the employee is eligible to receive workers' compensation. We need not address this argument, however, in light of our ultimate conclusion that the plaintiff is entitled to a § 31-308a award unmitigated by her state disability retirement benefits.

important distinctions between the plans,[18] but for our purposes in this opinion, it is the similarities between the plans that are significant. Under either plan, a disability that prevents the employee from continuing to work in the position for which the employee was hired triggers the payment of disability retirement benefits. See General Statutes §§ 5-169 (a) and (b) and 5-192p (a). More important, both plans expressly require state disability retirement benefits to be reduced, or offset, by the employee's receipt of certain types of workers' compensation benefits. See General Statutes §§ 5-169 (g) and 5-170 (b); see also General Statutes § 5-192p (d).

The review board ignored the plaintiff's arguments regarding the offsets available under the State Employees Retirement Act because the record was inadequate regarding whether the plaintiff received benefits under Tier I or Tier II, and because the availability of such offsets was not argued in much detail. Additionally, the review board noted that, "[a]s a general matter, [the] commission's jurisdiction is limited to claims and questions arising under the Workers' Compensation Act. *Hunnihan* v. *Mattatuck Mfg. Co.*, 243 Conn. 438, 443 [705 A.2d 1012] (1997)." Therefore, there was no finding that the State Employees Retirement Act mandated an offset for workers' compensation benefits. The plaintiff claims that no such finding was required because the distinction between the two retirement tiers is insubstantial and irrelevant for purposes of this case. We agree, and note further that a commissioner *must* consider other statutory provisions when it is necessary to do so in order to appropriately dispose of the issues

[18] For example, under Tier I, retirement contributions are required of the employee; see General Statutes § 5-161; whereas such contributions are not required under Tier II. Additionally, Tier I employees receive benefits based upon Social Security earnings as well as excess earnings beyond Social Security; see General Statutes § 5-162; whereas the Tier II plan utilizes a different "breakpoint" and percentage system to award benefits. See General Statutes §§ 5-192f (a) and 5-192*l* (c).

before him or her. See *Hunnihan* v. *Mattatuck Mfg. Co.,*
supra, 243 Conn. 443 n.5 ("subject matter jurisdiction of
the commission . . . has encompassed the interpreta-
tion of statutory provisions codified outside the Work-
ers' Compensation Act when such interpretations have
been incidentally necessary to the resolution of a case
arising under that act").

If the plaintiff were a Tier I employee, General Stat-
utes § 5-170 (b) would govern. Section 5-170 is entitled
"[e]ffect of workers' compensation and disability pay-
ments," and it provides in relevant part that *"[r]etire-
ment income payments made to a member receiving
disability payments* and necessary medical and hospi-
tal expenses *under the provisions of the Workers' Com-
pensation Act,* as set forth in chapter 568, *shall be
reduced for any period for which such disability pay-
ments are being made or have been made,* except as
provided in subsection (c) . . . ." (Emphasis added.)
General Statutes § 5-170 (b). The statutory exceptions
to the offset do not apply in the present case.[19]

---

[19] General Statutes § 5-170 (c) provides: "Retirement income payments
shall not be reduced: (1) For a member receiving a specific indemnity award
under section 31-307 or 31-308; (2) for a member who received a judgment
for personal injuries and pain and suffering under the provisions of section
31-293, provided he has reimbursed the state in full for all sums expended
by it under chapter 568." We note that these exceptions are not triggered
in the present case because the benefits at issue do not constitute a specific
indemnity award under either General Statutes (Rev. to 1989) § 31-307 or
General Statutes § 31-308. Furthermore, the inherent difference between
specific indemnity awards and § 31-308a awards makes clear why § 31-
308a benefits would not be included among the exceptions to the offset.
"[S]pecific indemnity benefits, are not paid as compensation for loss of
earning power but to compensate the injured employee for the incapacity
through life because of the loss or loss of use of the body member in
question. Thus, such benefits are not dependent on actual incapacity. Even
if the claimant has returned to work and is earning more than he did prior
to the injury, but has incurred a permanent partial disability, he is entitled
to a specific indemnity award." J. Asselin, supra, p. 151; see also Conn. Joint
Standing Committee Hearings, Public Personnel, 1951 Sess., p. 187-4 ("since
payments for specific awards are . . . not based upon loss of earnings, but
on the handicap for life, an employee can retire, receive a retirement salary
and keep such specific award"). In comparison, § 31-308a benefits are avail-

Although the statutory precursor to the current offset provision of § 5-170 surfaced in 1961; see Public Acts 1961, No. 234, § 19; the general idea that the receipt of state retirement disability benefits should be reduced by the receipt of workers' compensation benefits appeared as early as 1941. "No person shall be paid a retirement salary for any month for which he shall receive payments resulting from a [workers'] compensation or other disability claim from the state or any political subdivision thereof or from any [workers'] compensation insurance carried by the state or any political subdivision thereof, except to the extent of the excess over such payment of such retirement salary which he would have been entitled to in the absence of such payments." General Statutes (Sup. 1941) § 12f. The legislature wanted to ensure that no state employee would receive double compensation payments for a loss of earnings because of the operation of two separate statutory schemes—the retirement statutes and the workers' compensation statutes.[20] See Conn. Joint

able only *if* the claimant remains incapacitated and only *after* the receipt of specific indemnity benefits has ended.

[20] In 1987, the legislature amended subsections (a) and (b) of § 5-170 to further ensure that state employees who receive workers' compensation and state disability retirement benefits do not receive double compensation. See Public Acts 1987, No. 87-287, § 1. Currently, General Statutes § 5-170 (b) provides in relevant part that "[u]nless the Retirement Commission has waived the overpayment . . . in any case in which a member has received retirement income payments in excess of his entitlement under this subsection, the Comptroller shall act to recover such overpayments by any appropriate means, including (1) withholding such sums from future retirement income payments in accordance with regulations to be adopted by the Retirement Commission . . . and (2) *petitioning the workers' compensation commissioner having jurisdiction of the member's workers' compensation claim for an order reducing the member's workers' compensation award by the amount of such overpayment. . . .*" (Emphasis added.) The purpose of this amendment was to address situations in which retired state employees were awarded retroactive disability compensation. See Raised Committee Bill No. 7615, 1987 Sess., statement of purpose; Conn. Joint Standing Committee Hearings, Appropriations, Pt. 4, 1987 Sess., p. 1228, remarks of Robert Finder ("[The bill] would prohibit collecting retirement and disability benefits for the same period of time. . . . [I]t addresses a

Standing Committee Hearings, Public Personnel, 1951 Sess., p. 187-3 ("[the statute] recognizes that it would be unjust to pay an injured employee both a retirement salary and, in addition, to pay compensation for loss of earnings under the Work[ers'] Compensation Act").[21]

deficiency in our [w]orkers' [c]ompensation legislation, not a deficiency in our pension program."); Conn. Joint Standing Committee Hearings, supra, pp. 1231–32, remarks of Gordon Hall ("Payments for disability compensation are made only if [they are] larger than disability retirement and retirement benefits are reduced by the amount of the disability payment. This prevents a double payment. However, existing statutes do not address situations in which an employee who is already receiving disability retirement is awarded a disability retroactively. This situation now leads to a double recover[y]."); 30 S. Proc., Pt. 9, 1987 Sess., p. 3323, remarks of Senator Steven Spellman ("What this bill does is clarify the ability of the [s]tate [r]etirement [c]ommission to collect overpayments of disability awards that are retroactive in nature. Under current law there is [no] provision to prevent double payment where a person has been placed on retirement disability and subsequently receives a retroactive disability award from [w]orkers' [c]ompensation and this enables the [r]etirement [d]ivision to make collection under those circumstances."). Accordingly, this amendment further supports our conclusion that the State Employees Retirement Act provides for the receipt of workers' compensation benefits to be taken into account when awarding disability retirement benefits, and authorizes the offset to be taken into account in the calculation of workers' compensation awards only when there has been an overpayment.

[21] In addition to the legislative history available, there is significant secondary material that supports the plaintiff's contention that the legislature clearly intended the retirement offsetting scheme as provided by the State Employees Retirement Act, and not the mechanism the review board currently utilizes. See Letter from Judith S. Lohman, principal analyst, office of legislative research (May 14, 1993) ("[u]nder current law . . . the [s]tate [e]mployees' [r]etirement [s]ystem . . . require[s] workers' compensation to offset disability retirement benefits"); Letter from Judith S. Lohman, principal analyst, office of legislative research (December 21, 1992) ("[Workers' compensation] benefits may offset or be offset by other benefits that claimants receive. Among these are . . . state . . . disability retirement benefits."); State of Connecticut: State Board of Mediation and Arbitration, In the Matter of Pension Fact Finding (1981) p. 43 (§§ 5-169 and 5-170 provide for "a reduction and 100 [percent] setoff of disability benefits for certain types of [w]orkers' [c]ompensation" benefits).

We also note the acknowledgment of the offset by several formal opinions authored by the attorney general. See Opinions, Conn. Atty. Gen. No. 2000-008 (March 3, 2000), pp. 3–4 n.1 ("[R]etirement from state employment does not affect the eligibility of an employee to receive workers' compensation

In 1983, the legislature amended § 5-170 (b) in order to adjust the statutory framework to take into account the newly adopted Tier II retirement system, and therefore added a provision for the reduction of benefits in accordance with § 5-169. Public Acts 1983, No. 83-533, § 48.[22]

Section 5-169 (g)[23] governs the maximum disability retirement benefits allowed under the Tier I scheme.

benefits. Injured employees continue to receive workers' compensation benefits as long as they are unable to work because of their work-related injury and remain eligible under [c]hapter 568. However, *disability retirement benefits are subject to reduction for any time during which the retiree receives certain types of workers' compensation benefits.* See . . . [General Statutes] § 5-170 and § 5-192p." [Emphasis added.]); Opinions, Conn. Atty. Gen. No. 84-93 (July 24, 1984), p. 360 ("§ 5-170 provides rules to be applied where an individual who is retired is receiving payments under the Workers' Compensation Act"); Opinions, Conn. Atty. Gen. No. 85-044 (June 27, 1985) (discussing operation of § 5-170 as requiring state disability retirement benefits to be offset by workers' compensation benefits). "Although an opinion of the attorney general is not binding on a court, it is entitled to careful consideration and is generally regarded as highly persuasive." (Internal quotation marks omitted.) *Velez* v. *Commissioner of Correction,* 250 Conn. 536, 545, 738 A.2d 604 (1999).

Moreover, we note the scholarly acknowledgment of the offset. See J. Asselin, supra, p. 284 ("If a state . . . employee becomes injured on or off the job, he may be eligible for retirement benefits if the worker will be unable to return to any work with the state . . . . If the worker is also eligible for workers' compensation benefits, the [disability] retirement allowance is reduced by the amount of workers' compensation incapacity payments paid during the same time period."); id., p. 88 ("A claimant for worker's compensation benefits who is a state worker may also apply for state disability retirement. While there is an offset for any workers' compensation payments received . . . [under] § 5-170 . . . a state disability retirement may provide an interim source of income if the claimant's workers' compensation case is disputed and a lengthy period of time will ensue before a formal hearing can be held and the case decided.").

[22] Public Act 83-533 codified changes in the previous law that resulted from a pension agreement negotiated between the state and numerous collective bargaining units. 26 H.R. Proc., Pt. 25, 1983 Sess., p. 8861, remarks of Representative John Atkin. It was approved by a General Assembly resolution on June 30, 1982, and became effective on October 1, 1982. In sum, it established a noncontributory pension system, known as Tier II, for employees hired after January 1, 1984.

[23] General Statutes § 5-169 (g) provides: "Twenty per cent of all outside earned salary or wages shall be offset against the disability retirement

Subsection (g) provides two maximum calculations and provides that if both maximums apply, the lesser disability benefit will be paid. Both maximums provide that "[t]he disability benefit . . . shall not exceed [either 100 percent or 80 percent] of the member's base

payments by the state during the first two years of disability. On or after October 1, 1987, at the expiration of such period, if the total disability benefits and outside earnings exceed one hundred per cent of the pay of such member at the date of disability, adjusted annually by a percentage increase equal to the cost of living allowances applied to the member's disability retirement benefits pursuant to this chapter, the disability payment will be reduced by the amount such total exceeds such adjusted earnings. Notwithstanding the foregoing provisions of this section, the following maximum benefit limitations shall apply if the member's date of disability occurs on or after January 1, 1984. Such maximum benefit limitations shall apply coincident with the receipt of benefits under subsection (d) of section 5-142 by any member of the Division of State Police within the Department of Public Safety. To verify the operation of the maximums, members shall authorize the Social Security Administration to provide the Retirement Commission, on an ongoing basis, any information with regard to covered earnings or Social Security benefits payable. In the event both of the maximums indicated below apply, the lesser disability benefit shall be payable. Such maximums shall be subject to reexamination annually, as indicated in subsection (h) of this section.

"(1) The disability benefit under this section shall not exceed one hundred per cent of the member's base salary or the rate of salary of the member on his date of disability, whichever is greater, *less any periodic cash benefit payments being made to a member under the Workers' Compensation Act,* less any federal disability Social Security benefits, including primary and family, paid on account of the member's Social Security earnings history, less all outside earned salary or wages, unless the Retirement Commission determines that such salary or wages are being paid as part of the rehabilitation of the disabled member. Any such determination that such earned salary or wages is for rehabilitation must be reapproved by the Retirement Commission no less frequently than every eighteen months, or the offset shall apply. *The offset for workers' compensation* and federal Social Security disability benefits *shall apply when such benefits commence even if such benefits initially commence after the member's disability retirement date.*

"(2) The disability benefit provided under this section shall not exceed eighty per cent of the member's base salary or the rate of salary of the member on the date of disability, whichever is greater, *less any periodic cash benefit payments being made to a member under the Workers' Compensation Act,* less any federal disability Social Security benefits, including primary and family, being paid on account of the member's Social Security earnings history. The offsets shall apply when such benefits commence even if such benefits initially commence after the member's disability retirement date." (Emphasis added.)

salary or the rate of salary of the member on his date of disability, whichever is greater, *less any periodic cash benefit payments being made to a member under the Workers' Compensation Act . . . .*" (Emphasis added.) General Statutes § 5-169 (g) (1) and (2). Importantly, § 5-192p (d),[24] governing Tier II employees, provides identical offset language.[25] See General Statutes

[24] General Statutes § 5-192p (d) provides: "Notwithstanding the provisions of subsection (c) of this section, the following maximum benefit limitation shall apply. In order to verify the operation of the maximums, it shall be a condition precedent to receipt of any disability benefits under this section that a member authorize the Social Security Administration to provide the Retirement Commission, on an ongoing basis, any information with regard to covered earnings or Social Security benefits payable. In the event both of the maximums indicated below apply, the lesser disability benefit shall be payable. Such maximums shall be subject to reexamination annually, as indicated in subsection (e) of this section.

"(1) The disability benefit provided under this subsection shall not exceed (A) one hundred per cent of the member's final average earnings or the rate of salary of the member on date of disability, whichever is greater, *less (B) any periodic cash benefit payments being made to a member under the Workers' Compensation Act,* less (C) any federal disability Social Security benefits both primary and family paid on account of the member's Social Security earnings history less (D) all outside earned salary or wages unless the Retirement Commission determines that such salary or wages are being paid as part of the rehabilitation of the disabled member. Any such determination that such earned salary or wages is for rehabilitation must be reapproved by the Retirement Commission no less frequently than every eighteen months, or the offset shall apply. The offset for workers' compensation and federal Social Security disability benefits shall apply when such benefits commence even if such benefits initially commence after the member's disability retirement date.

"(2) The disability benefit provided under this subsection shall not exceed (A) eighty per cent of the greater of the member's final average earnings or the rate of salary of the member on the date of disability, *less (B) any periodic cash benefit payments being made to a member under the Workers' Compensation Act,* less (C) any federal disability Social Security benefits, both primary and family being paid on account of the member's Social Security earnings history. The offsets shall apply when such benefits commence even if such benefits initially commence after the member's disability retirement date." (Emphasis added.)

[25] At oral argument before this court, the plaintiff stated that she is a Tier II employee, and would therefore be governed by the offset mechanism under § 5-192p (d) (1) and (2).

§ 5-192p (d) (1) and (2) ("[t]he disability benefit . . . shall not exceed . . . [either 100 percent or 80 percent] of the member's final average earnings or the rate of salary of the member on date of disability . . . *less . . . any periodic cash benefit payments being made to a member under the Workers' Compensation Act*" [emphasis added]). Therefore, regardless of whether the plaintiff is covered by the auspices of Tier I or Tier II, the State Employees Retirement Act mandates that her disability retirement benefits be offset by the workers' compensation benefits that she receives under § 31-308a.

On December 15, 2003, after the present case was argued before this court, we issued an order requesting that the retirement commission advise us of its practices in reducing state disability retirement benefits by the amount of any workers' compensation benefits that the employee has been awarded pursuant to § 31-308a. On January 15, 2004, the retirement commission filed a brief indicating that it does not offset such benefits.

The retirement commission indicated that its method of treating § 31-308a benefits awarded to state disability retirees is a result of the manner in which retirement service credit is granted during periods in which claimants are receiving workers' compensation benefits. In the past, when no retirement contributions were required for employees who were receiving permanent partial disability benefits under § 31-308a or specific indemnity benefits under § 31-308, no retirement credit was granted. When retirement contributions were required for employees who were receiving temporary total disability under § 31-307[26] or temporary partial disability under § 31-308 (a), retirement credit was granted.

[26] General Statutes (Rev. to 1989) § 31-307 provides in relevant part: "If any injury for which compensation is provided under the provisions of this chapter results in total incapacity to work, there shall be paid to the injured employee a weekly compensation . . . ."

Currently, no retirement contributions are required under General Statutes § 5-161 (f),[27] but the commission's practice of awarding or not awarding retirement credit based on the type of benefits received has continued due to the inherent contrast between benefits made in recognition of a temporary loss of earning power, and those made in recognition of a permanent disability.

The retirement commission explained that because "periods during which an individual receives benefits for permanent loss are not included as retirement credit before retirement . . . such payments are not offset from the disability retirement benefits after retirement." Specifically, because payments pursuant to § 31-308a are paid in recognition of permanent disability, the retirement commission does not use such payments to reduce, or offset, state disability retirement payments. The retirement commission also contended that since § 31-308a benefits are discretionary and of relatively short duration, a workers' compensation commissioner is in a better position to ensure that the proper amount of benefits is being received by the plaintiff. The retirement commission further noted that, should we determine that state disability retirement benefits should be offset by § 31-308a benefits, there will be "negative administrative consequences."

Although the commission's current practice might be based on sound administrative reasoning, and a change in such practice inevitably might lead to thorny administrative concerns, we cannot condone the continued contravention of our legislature's directive that state disability retirement benefits be offset by certain types of workers' compensation benefits, such as those avail-

---

[27] General Statutes § 5-161 (f) provides in relevant part: "The state shall make no retirement contributions for and no retirement contributions shall be due from a member receiving workers' compensation . . . provided full retirement credit shall be allowed to such member for the period during which he is receiving such compensation."

able pursuant to § 31-308a.[28] "There is a presumption that the legislature, in enacting a law, does so with regard to existing relevant statutes so as to make one consistent body of law." *State* v. *Murtha*, 179 Conn. 463, 466, 427 A.2d 807 (1980). In addition, when statutes provide that an activity shall be performed in a certain manner, there ordinarily is an implied prohibition against performing that activity in a different fashion. *State* v. *Kelly*, 208 Conn. 365, 371, 545 A.2d 1048 (1988) ("[a] statute which provides that a thing shall be done in a certain way carries with it an implied prohibition against doing that thing in any other way" [internal quotation marks omitted]). In the present case, we conclude that the legislature explicitly has provided for an offset mechanism under §§ 5-169 (g) and 5-192p (d); see footnotes 23 and 24 of this opinion; and we cannot allow the past practice of an agency, no matter how well-meaning, to disregard the clear mandate of such provisions.[29]

---

[28] In addition, we note that, under the retirement commission's current interpretation of § 31-308a, the plaintiff will lose a tax benefit that the legislature may have intended her to enjoy. Under the federal Internal Revenue Code, state disability retirement benefits are taxable to the worker, whereas workers' compensation benefits are tax-free. See 26 U.S.C. § 104 (a) (1); 26 C.F.R. § 1.104-1 (b) (2003); see also 1 J. Mertens, The Law of Federal Income Taxation (8th Rev. 2003) § 7.87, pp. 7-166 through 7-167. Under the retirement commission's current offsetting practice, the plaintiff receives a larger taxable disability benefit that ultimately leads to a reduced net amount.

[29] Our decision is not inconsistent with other case law closely related to the issue of whether certain workers' compensation benefits should be offset by state disability retirement benefits, or vice versa. See *Rinaldi* v. *Enfield*, 82 Conn. App. 505, 513, 844 A.2d 949 (2004) (§ 31-308a award not offset by claimant's receipt of regular retirement benefits; court distinguished *Iannarone* decision because *Rinaldi* involved receipt of disability pension); see also *LaProvidenza* v. *State Employees' Retirement Commission*, 178 Conn. 23, 28–29, 420 A.2d 905 (1979) (offset would not apply if municipal retirement payments were based on age or length of service rather than disability); *Grogan* v. *New Britain*, 175 Conn. 174, 178–79, 397 A.2d 97 (1978) (holding plaintiff entitled to full workers' compensation benefits "undiminished by being offset against his . . . disability pension benefits" because municipality did not participate in state disability retirement plan

The decision of the review board is reversed and the case is remanded for recalculation of the plaintiff's § 31-308a benefits award.

In this opinion the other justices concurred.

whose provisions do provide for such offset), superseded by statute as stated in *Pokorny* v. *Getta's Garage*, 22 Conn. App. 539, 545, 579 A.2d 98 (1990) ("statute was amended to provide that any insurer that furnished benefits or services to a person suffering an injury or illness covered by workers' compensation could place a lien on the proceeds of any compensation award to the extent of benefits paid for the effects of the injury or illness arising out of and in the course of employment as a result of a controverted claim"), rev'd, 219 Conn. 439, 594 A.2d 446 (1991); *Olszewski* v. *State Employees' Retirement Commission*, 144 Conn. 322, 325–26 130 A.2d 801 (1957) (discussing retirement statute for municipal employee which is similar to statute governing state employee retirement and noting that unlike municipal statute, state statute offset provision has exception wherein employer is reimbursed from judgment obtained against third party tortfeasor).